IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WASHINGTON COUNTY FAMILY ENTERTAINMENT, LLC, | ) ) ) | Civil Action No. 17-892 |
| Plaintiff, | ) ) | Magistrate Judge Lisa Lenihan |
| vs. | ) ) | |
| WILLIAM LEONARD ROBERTS II p/k/a RICK ROSS; RICK ROSS TOURING, LLC, *et al.*, | ) ) ) ) | ECF Nos. 70, 72 |
| Defendants. | ) | |

**OPINION**

Pending before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Rick Ross Touring, LLC ("Ross Touring"). (ECF No. 70.) In the motion, Ross Touring seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing the Second Amended Complaint filed against it by Plaintiff Washington County Family Entertainment, LLC ("WCFE") for lack of personal jurisdiction or, alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Also pending is the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant William Leonard Roberts II p/k/a/ Rick Ross ("Ross"). (ECF No. 72.) In his motion, Ross seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Second Amended Complaint filed against him for failure to state a claim. For the reasons set forth below, the Court will deny both motions.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action concerns a dispute arising from Ross's last-minute cancellation of a scheduled headlining concert performance at Wild Things Park in Washington, Pennsylvania (the "Park") on June 10, 2017 in alleged breach of a Talent Engagement Agreement dated May 8, 2017 and Defendants' alleged conversion of monies wired by WCFE to secure Ross's appearance and performance at the Park.

Defendant Ross is a performance artist known as Rick Ross and a citizen of the State of Georgia. (Second Am. Compl. ¶ 2, ECF No. 67.) Ross Touring is a Florida LLC with its principal place of business located in Mississippi. *Id.* ¶ 3. WCFE is a Pennsylvania limited liability company whose sole member, Sports/Facility, LLC, also is a Pennsylvania limited liability company. *Id.* ¶ 1. WCFE is the master tenant of the Park, a sporting event and entertainment facility located in Washington, Pennsylvania. *Id.* ¶ 15.

On February 23, 2017, WFCE wired a deposit to secure the appearances of Wiz Khalifa and Defendant Little Uzi at the Park on June 10, 2017. *Id.* ¶ 16. In March 2017, WCFE was advised that Khalifa had not authorized the engagement and that Khalifa would not be appearing at the Park. *Id.* ¶ 18. In April and May, 2017, Defendants Goodlife Entertainment LLC ("Goodlife") and John Wardlow ("Wardlow"), the sole and managing member of Goodlife, represented to WCFE that they were the authorized agents for Ross and that Ross wanted to replace Khalifa as the headline performer for the June 10, 2017 concert. *Id.* ¶¶ 6, 20.

Relying upon Goodlife and Wardlow's representations and assurances, on May 8, 2017, WCFE and Ross entered into a Talent Engagement Agreement (the "TEA") under which Ross was engaged to perform a headlining setlist at the Park on June 10, 2017. Goodlife and

Wardlow executed the TEA on behalf of and as the authorized agent for Ross and warranted that they had the authority to bind Ross to the TEA and the ability to deliver the performance of services of Ross. *Id.* ¶ 21.[1] On May 8, 2017, WCFE wired the initial sum of $87,500.00 as a deposit to secure Ross's appearance. *Id.* ¶ 22. Unbeknownst to WCFE, on May 9, 2017, Ross Touring, Goodlife, and Wardlow purportedly entered into an Agreement (the "Wardlow Agreement"), on an All Axxess form, under which Ross was separately engaged to perform a setlist at the Park on June 10, 2017. The existence of the Wardlow Agreement was not disclosed to WCFE. *Id.* ¶ 23.[2]

After tendering the initial deposit for Ross's appearance, tickets for the June 10, 2017 concert were made available and sold to the public. In addition, WCFE moved forward to market, promote, stage, produce and otherwise prepare for the concert at the Park with expenditures of time and money, including, but not limited to, incurring expenses for Ticketmaster fees; radio and press promotions; social media promotions; stage, sound and other equipment rentals; security; and labor. *Id.* ¶ 24. WCFE also engaged and paid additional local artists to perform as supporting acts for the June 10, 2017 concert. *Id.*

On June 5, 2017, Wardlow contacted WCFE and demanded a final wire payment in the amount of $112,500.00 to guarantee Ross and Lil Uzi's appearances at the Park on June 10, 2017. *Id.* ¶ 25. On the morning of June 8, 2017, WCFE wired that amount as the final deposit payment to secure the appearances of Ross and Lil Uzi. *Id.* ¶ 26. WCFE alleges, upon

---

[1] Copies of the TEA are attached to the original Complaint, the Amended Complaint, and WCFE's briefing. (ECF Nos. 1-1, 5-1, 76-1.)

[2] A copy of the Wardlow Agreement is attached as Exhibit 3 to WCFE's Response to Ross Touring's Motion to Dismiss. (ECF No. 75-3.)

information and belief, that the deposit payments it tendered were received by, distributed among, and/or converted by all Defendants. *Id.* ¶ 27.

At or around 7:00 pm on June 8, 2017, Wardlow contacted WCFE and advised that neither Ross nor Lil Uzi would be performing at the Park on June 10, 2017. *Id.* ¶ 28. WCFE demanded from Defendants a return of the deposit monies and reimbursement to WCFE of all damages, costs, expenses, and fees that WCFE incurred as a result of the failure to appear and perform. *Id.* ¶ 29. Defendants, however, have failed and refused to return all the tendered deposit monies to WCFE or to reimburse WCFE for its alleged damages, costs, expenses, and fees. *Id.* ¶ 30.

On July 5, 2017, WCFE instituted this action in this Court by way of a Complaint that alleged claims against Ross for breach of contract and unjust enrichment, and against Ross and four other Defendants (All Axxess Entertainment, LLC, Anthony Miller, Goodlife, and Wardlow) for conversion. (ECF No. 1.) WCFE filed a First Amended Complaint as of right asserting the same claims against those same Defendants on July 19, 2017. (ECF No. 5.) Ross filed an Answer to the First Amended Complaint and Affirmative Defenses on September 5, 2017. (ECF No. 11.) On January 31, 2018, WCFE filed a Motion for Leave to File a Second Amended Complaint that this Court granted via text order on March 6, 2018, over Ross's objections. (ECF Nos. 55, 66.) The Second Amended Complaint was filed on March 12, 2018 and added Defendants Ross Touring, Symere Woods ("Lil Uzi"), Uzivert, LLC, Paradigm Talent Agency, and Erin Larsen. (ECF No. 67.) In relevant part, the Second Amended Complaint asserts a breach of contract claim against Ross (Count IV) and claims for conversion, unjust enrichment, promissory estoppel/detrimental reliance, fraudulent misrepresentation/

4

concealment, and civil conspiracy against all Defendants, including Ross Touring (Counts I-III, V-VI). *Id.* WCFE's claims arise out of Ross's alleged material breach of the TEA in connection with his last-minute cancellation of the scheduled June 10, 2017 concert and Defendants' alleged conversion of monies wired by WCFE to secure Ross's appearance and performance at the Park. *Id.*

On March 26, 2018, Ross Touring filed its Motion to Dismiss for lack of personal jurisdiction and failure to state a claim and Brief in Support, and, on April 4, 2018, Ross filed his Motion to Dismiss for failure to state a claim and Brief in Support. (ECF Nos. 70-73.) WCFE filed Responses in Opposition to both Motions. (ECF Nos. 75-76.) Thus, the motions are ripe for disposition.

## II. STANDARD OF REVIEW - MOTION TO DISMISS

### A. Fed. R. Civ. P. 12(b)(2)

In responding to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Where, as here, an evidentiary hearing is not held on the 12(b)(2) motion, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009)

5

(citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (other citation omitted).

In deciding a Rule 12(b)(2) motion, although the court must accept the plaintiff's allegations as true and resolve all doubts in its favor, *D'Jamoos*, 566 F.3d at 102, the plaintiff may not rest solely on the pleadings to satisfy its burden of proof. *See Pinker*, 292 F.3d at 368; *Carteret Sav. Bank, S.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Rather, the plaintiff must present evidence that demonstrates its prima facie case for the exercise of personal jurisdiction. *See Mellon Bank (East) PSFS*, 960 F.2d at 1223. If the plaintiff succeeds, the burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction by the forum state would violate due process, *i.e.*, the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales*, 384 F.3d at 97 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1986)).

### B. <u>Fed. R. Civ. P. 12(b)(6)</u>

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a 'plausible' claim for relief,

and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

In deciding a 12(b)(6) motion to dismiss, the Court may consider any exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the claims are based upon those documents. *Id.* A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. ANALYSIS

#### A. Ross Touring's 12(b)(2) Motion to Dismiss

The central question at issue here is whether WCFE has demonstrated a prima facie case of personal jurisdiction over Ross Touring. District courts may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001); Fed. R. Civ. P. 4(k). The Pennsylvania long-arm statute authorizes courts to exercise personal jurisdiction over a defendant

to the full extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. *See Remick*, 238 F.3d at 255; *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998); 42 Pa. Cons. Stat. § 5322(b). In interpreting the Due Process Clause, federal courts have restricted personal jurisdiction to those cases where the defendant has at least "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Arlington Indus., Inc. v. Electronic Custom Distributors, Inc.,* 817 F. Supp. 2d 473, 477 (M.D. Pa.2011); *see also Remick*, 238 F.3d at 255.

Personal jurisdiction may be established in accordance with Constitutional principles through a showing of general or specific jurisdiction. Specific jurisdiction applies where the "cause of action is related to or arises out of the defendant's contacts with the forum," *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir.2003) (quoting *Pinker,* 292 F.3d at 368), while general jurisdiction exists where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action. *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). In this case, Plaintiff argues only that specific jurisdiction over Defendant is proper; thus, only specific jurisdiction is relevant here.

Typically, a court determines specific jurisdiction on a claim-by-claim basis. *O'Connor,* 496 F.3d at 318 n.3 (citing *Remick,* 238 F.3d at 255-56). Claim-specific analysis generally "is appropriate for analyzing a case with both contract and tort claims because 'there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims.'" *Leone v. Cataldo*, 574 F. Supp. 2d 471, 477 (E.D. Pa. 2008) (quoting *Remick,* 238 F.3d at 255–56). When claims overlap factually, however, claim-specific analysis may not be necessary. *See O'Connor,* 496 F.3d at 318 n.3.

With contract disputes, court typically utilize the "traditional test" of specific personal jurisdiction. Under this test, courts must undertake a three-part inquiry:

> First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

*D'Jamoos*, 566 F.3d at 102; *Maser v. Deeble*, No. CV 17-99, 2017 WL 930795, at *3–4 (W.D. Pa. Mar. 9, 2017). The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. *D'Jamoos*, 566 F.3d at 102. A defendant's physical entrance into the forum state is not necessary to meet this requirement; however, the contacts must amount to a "deliberate targeting of the forum."[3] *Id.* In intentional tort cases, specific personal jurisdiction may also be evaluated under the *Calder* "effects test" which necessitates a plaintiff to prove these factors:

> The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus., Inc.*, 155 F.3d at 265-66. Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Id.* at 260.

The claims against Ross Touring in the Second Amended Complaint – both tortious and

---

[3] "The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident. The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank*, 960 F.2d at 1223.

9

equitable – all arise from WCFE's assertion that the defendants conspired to obtain and convert deposit monies from WCFE by fraudulently promising that Ross would perform at Wild Things Park on June 10, 2017 and then deliberately canceling that concert at the last minute without returning the deposit monies to WCFE. (ECF No. 67.) After careful review of the Second Amended Complaint, the parties' briefs, and associated documents of record, the Court finds that WCFE has established with reasonable particularity sufficient minimum contacts between Ross Touring and Pennsylvania with respect to its claims and, thus, has demonstrated at least a prima facie case of personal jurisdiction over Ross Touring.

Among other things, WCFE avers that the Wardlow Agreement was an undisclosed sham agreement that Ross Touring and the other defendants created to help further their scheme and to insulate themselves from liability. *Id.* ¶¶ 23, 53; ECF No. 75-3. As alleged in the Second Amended Complaint and evidenced by the agreement attached as Exhibit 3 to its Brief, Ross Touring (identified along with Ross in the agreement as the "Artist") entered into the Wardlow Agreement with Goodlife and Wardlow (the "Buyer") on or about May 3, 2017. (ECF Nos. 67 & 75-3.) Printed on an All Axxess form, the Wardlow Agreement deals with the engagement of Ross to furnish the June 10, 2017 performance at issue and clearly identifies the name and place of the engagement as Wild Things Park in Washington, Pennsylvania. (ECF No. 75-3, at 1.) WCFE also has provided documentation showing that Defendant Miller of All Axxess[4] received $40,000 in WCFE deposit monies and wired at least $32,000 of that money to Ross Touring on or around May 9, 2017. (ECF No. 75-4.) It is undisputed that Ross canceled the June 10, 2017

---

[4] The Wardlow Agreement identifies All Axxess as the agent/consultant for the "Artist." (ECF No. 75-3, at 8 ¶ 22.) Again, the Wardlow Agreement defines the "Artist" as both Ross *and* Ross Touring. *Id.* at 1.

performance at the eleventh hour and that WCFE has not received a return of all of its deposit monies from Ross Touring or otherwise. WCFE has provided a declaration from its president asserting that on June 9, 2017 – one day before the concert date – WCFE received in Pennsylvania a copy of a cancellation letter allegedly prepared by All Axxess/Miller. (ECF No. 75-2 & Ex. A.)[5]

With respect to WCFE's intentional tort claims – conversion, fraudulent misrepresentation/concealment, and civil conspiracy[6] – the Second Amended Complaint plainly alleges the first two elements of the *Calder* effects test, *i.e.*, that Ross Touring committed intentional torts and that WCFE felt the brunt of the harm in Pennsylvania, where WCFE is located and where Defendant Ross was scheduled to perform. Thus, the only question is whether Ross Touring expressly aimed its alleged tortious conduct at Pennsylvania so that Pennsylvania can be said to be the focal point of the tortious activity. WCFE can establish that Ross Touring expressly aimed its conduct at Pennsylvania, if it shows that Ross Touring knew that WCFE would suffer the brunt of the harm caused by its conduct in Pennsylvania along with some specific activity indicating that Ross Touring expressly aimed its tortious conduct at Pennsylvania. *IMO Indus.*, 155 F.3d at 266. Taking the above assertions as true, the Court has no doubt that Ross Touring knew that its alleged tortious conduct would harm WCFE in Pennsylvania and that it aimed that alleged misconduct at Pennsylvania – the location of WCFE, the scheduled concert venue, and the

---

[5] WCFE's president also asserts that the deposit monies described in the Second Amended Complaint were wired from accounts held by WCFE at financial institutions in Pennsylvania. (ECF No. 75-2 ¶ 5.)

[6] WCFE's remaining two claims against Ross Touring – unjust enrichment and promissory estoppel – are quasi-contractual equitable claims arising from the same set of facts as the other counts. For the reasons set forth more fully in this subsection, WCFE has established a prima facie case of personal jurisdiction under both the traditional and effects test based on these facts, and, therefore, the equitable claims also must proceed to discovery.

source of the deposit monies.

WCFE also has established a prima facie case that Ross Touring – by actively participating in the arrangement of a concert engagement by its sole member to take place in Pennsylvania with a company located in Pennsylvania – purposely directed its activities at Pennsylvania, and this litigation inarguably has arisen from those alleged activities. Thus, the traditional test of personal jurisdiction also is met.

Once a plaintiff makes out a prima facie case of personal jurisdiction, the burden shifts to the defendant to make a compelling case that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales*, 384 F.3d at 97. Ross Touring has failed to meet this burden. Factors courts may consider when evaluating this issue include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Carteret Sav. Bank*, 954 F.2d at 150 (citing *Burger King*, 471 U.S. at 477).

Here, the Court finds it difficult to see how defending against WCFE's claims in Pennsylvania would unduly burden Ross Touring, especially given Ross Touring's close connection to Defendant Ross who has not contested personal jurisdiction in this case.[7]

---

[7] As previously discussed, the Wardlow Agreement identifies *both* Ross Touring and Ross as the "Artist" engaged to perform at Wild Things Park and refers to both interchangeably. (ECF No. 75-3, at 1.) WCFE further has provided documentation indicating that Ross Touring is wholly owned by Defendant Ross and that Ross is a manager and the sole member of Ross Touring. (ECF No. 67 ¶ 3; ECF No. 75-1.) Taken as true, WCFE's averments show that Ross Touring was not, as it would have the Court believe, a remote bystander regarding the events at issue, but, rather, that Ross Touring and Ross are inextricably intertwined and operated as a single enterprise.

Moreover, Pennsylvania "has an interest in the recovery of expenses incurred by its residents" and WCFE has an interest in "obtaining the efficient resolution of the controversy in its home forum." *CDV Mgmt., L.P. v. Integrated Airline Servs., Inc.*, No. Civ. A. 04-4173, 2005 WL 230630, at *5 (E.D. Pa. Jan. 31, 2005). Ross Touring has not presented any persuasive contrary arguments, much less a compelling case, that this Court's exercise of personal jurisdiction over it would fail to comport with the notions of fair play and substantial justice.

For all of these reasons, the Court finds that WCFE has established a prima facie case of personal jurisdiction over Ross Touring and, accordingly, Ross Touring's Motion to Dismiss for lack of personal jurisdiction is denied.

### B. Ross Touring's 12(b)(6) Motion to Dismiss

In the alternative, Ross Touring seeks Rule 12(b)(6) dismissal of the Second Amended Complaint for failure to state a claim against it upon which relief can be granted. Rather than assert any new arguments in this regard, Ross Touring incorporates by reference Defendant Ross's Brief in Opposition to WCFE's Motion for Leave to File the Second Amended Complaint. *See* ECF No. 71 (incorporating ECF No. 61). Ross Touring asserts that this Court should dismiss the Second Amended Complaint against it for the same reasons set forth by Ross in that Brief.

In his Brief opposing WCFE's Motion for Leave to File the Second Amended Complaint, Ross argued that the proposed amendments against Ross Touring would be futile. (ECF No. 61.) In describing the standard for amendments under Federal Rule of Civil Procedure 15(a), Ross stated that "[a]n amendment is futile if the complaint, as amended, would not survive a motion to dismiss." *Id.* at 2-3. Ross further agreed that "in determining whether an amendment would be futile, 'the district court applies [to the proposed amendments] the same standard of legal

13

sufficiency as applie[d] under Federal Rule of Civil Procedure 12(b)(6).'" *Id.* at 3 (quoting *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010)).

Because the arguments set forth in the brief at ECF No. 61 were relatively well-developed, the Court disagrees with WCFE that Ross Touring "waived" a 12(b)(6) claim simply by incorporating, rather than restating, those arguments in its brief supporting the instant motion. As WCFE correctly notes, however, this Court already considered and rejected Ross Touring's arguments when it granted WCFE leave to file the Second Amended Complaint over Ross's objections. (ECF No. 66.) Because Ross Touring has not raised any new arguments supporting a 12(b)(6) dismissal or set forth any persuasive reason why the Court should reconsider its prior ruling, Ross Touring's 12(b)(6) Motion to Dismiss is denied.

### C. Ross's 12(b)(6) Motion to Dismiss

Ross has moved to dismiss all counts of the Second Amended Complaint against him for failure to state a claim upon which relief can be granted. Although Ross's Brief addresses each claim separately, all of his arguments in support of dismissal revolve around the central contention that the "Second Amended Complaint makes no mention of any direct or indirect interaction, communication, or any dealings with [Ross.] The entire Second Amended Complaint[] only reflects communication with John Wardlow from Goodlife Entertainment." (ECF No. 73, at 2.) In this regard, Ross does not dispute the existence of the TEA securing his performance at Wild Things Park. Rather, he repeatedly asserts that the TEA is an agreement between WCFE and Wardlow/Goodlife, not Ross; and that the TEA establishes that the deposit money at issue was wired to Wardlow/Goodlife, not Ross. *Id*. at 2-7.[8]

---

[8] Specifically, with respect to WCFE's conversion claim, Ross argues that the Second Amended Complaint fails to

14

In making these sweeping arguments, Ross conveniently ignores the Second Amended Complaint's assertion that Wardlow and Goodlife are Ross's authorized agents, and that they executed the TEA on behalf of and as the authorized agents for Ross. *See* Second Am. Compl. (ECF No. 67) ¶¶ 20-21. Despite numerous provisions throughout the TEA emphasizing the agency relationship, Ross represents that the TEA "makes no mention of any connection or relationship between WCFE and [Ross]." (ECF No. 63 at 5.) Indeed, the TEA makes clear in its opening paragraph that the Agreement is between WCFE ("Purchaser") and Ross ("Talent") and that Ross authorized Goodlife (the "Facilitator") to bind him (Ross) to the Agreement. TEA (ECF No. 1-1) at 1; *see also id.* at 3 (TEA signed by Wardlow as authorized representative on behalf of Ross). The TEA repeatedly emphasizes that Ross, not Goodlife/Wardlow, is responsible for rendering any performance and obligations owed under the Agreement. *See, e.g., id.* at 4, ¶ 4 ("It is agreed that [Goodlife] is *not* a party to the contract and acts herein only as the Facilitator for [Ross] . . . ." (emphasis added)); *id*. at 5, ¶ 10 ("Facilitator also signs this Agreement as an Agent of Talent and does not bind itself, but instead, binds the Talent to the performances and obligations due under the Agreement."); *id.* at 6, ¶ 14 ("Facilitator has the agent authority to bind Talent to the

---

establish that Ross exercised dominion over WCFE's property because WCFE wired the deposit money only to Defendants Wardlow and Goodlife. *Id.* at 3. Similarly, Ross seeks dismissal of the unjust enrichment claim on the grounds that pursuant to the TEA, WCFE wired the deposit money directly to Goodlife and Wardlow and not to Ross. *Id.* In a further attempt to distance himself from the challenged transactions, Ross goes on to argue that, under the Wardlow Agreement dated May 3, 2017, Goodlife/Wardlow sent Ross Touring $40,000 for the June 10, 2017 concert, and that Ross "was not even involved in this transaction." *Id.* at 4. As to the promissory estoppel/ detrimental reliance claim, Ross asserts that the Second Amended Complaint "makes clear that only Goodlife and Wardlow made any promises to WCFE," as reflected in the TEA. *Id.* at 4-5. Ross then argues that the breach of contract claim against him fails because WCFE entered into the TEA only with Goodlife and Wardlow. *Id* at 5-6. Continuing with this theme, Ross asserts that the fraudulent misrepresentation/concealment claim against him must fail because the pleading reflects that all of WCFE's communications about the concert were with Wardlow. *Id.* at 6. Finally, Ross states that the Second Amended Complaint fails to state a claim against him for civil conspiracy because it does not establish that Ross reached an agreement with anyone to commit an unlawful act or that Wardlow and Ross entered into the Wardlow Agreement for the purpose of defrauding WCFE. *Id.* at 7.

agreement and Facilitator's signature binds the Talent to the Agreement, not the Facilitator."). Further, despite Ross's disavowment of any connection to the deposit monies, the TEA expressly provides that "[i]n the event Talent cancels the Appearance, Talent shall refund to Purchaser the Deposit, where applicable. Talent and Purchaser acknowledge and agree that Purchaser shall look solely and exclusively to the Talent for repayment of the Deposit under the foregoing circumstances and shall not demand repayment from the Facilitator." *Id.* at 5, ¶ 12(a); *see also id.* at 5, ¶ 5(b) (". . . [I]n the event that Talent fails to complete the Performance in accordance with, and as contemplated by, the terms herein, . . . Talent shall fully refund to Purchaser one-hundred percent (100%) of the Performance Cost. . . ."); *id.* at 4, ¶ 2(iii) ("The Deposit is a guaranteed payment to the Talent in consideration of Talent's agreement to perform. . . .").[9]

As WCFE correctly notes, it is well-established that principals generally are responsible for the acts of their agents committed within the scope of the agents' actual or apparent authority. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494, 496 (3d Cir. 2013); *USPro Coatings & Bldg. Restoration, Inc. v. DIG-HP Cherry Hill Operating, LLC*, No. CIV. A. 10-1715, 2011 WL 476521, at *4 (E.D. Pa. Feb. 8, 2011) ("As a general rule, a principal may be bound to contracts executed by an agent if it is within the agent's authority to contract on behalf of that principal."); *Bolus v. United Penn Bank*, 525 A.2d 1215, 1223-23 (Pa. Super. Ct. 1987) (noting principals may be liable for their agents' tortious misrepresentations) (citing Restatement

---

[9] It is irrelevant for purposes of this Motion whether Ross received the deposit money directly from WCFE or from Goodlife/Wardlow. In addition to the agency principles discussed herein, a claim of unjust enrichment simply requires that plaintiff "confer" benefits on a defendant; it does not require that plaintiff "directly confer" those benefits." *Glob. Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 676 (E.D. Pa. 2008) (citing cases). To the extent Ross denies any receipt of the deposit monies at all, this is a disputed issue of fact not appropriate for resolution on a motion to dismiss.

(Second) Agency § 257). Here, WCFE has sufficiently pleaded the existence of an agency relationship between Ross and Goodlife/Wardlow to support plausible breach-of-contract[10] and tort claims against Ross as principal.

As set forth above, Ross's arguments in support of dismissal primarily center around the alleged lack of dealings between WCFE and Ross. Most of these arguments crumble after taking the above agency principles into account. To the extent Ross raises additional arguments in support of his Motion to Dismiss, the Court has carefully considered those arguments as well as the law applicable to WCFE's claims. Viewed in light of the liberal federal pleading standards, the Court finds that the allegations set forth in the Second Amended Complaint, when taken as true, allow the Court to draw a reasonable inference that Ross is liable for the claims asserted, and that the Second Amended Complaint meets the standards enunciated in *Twombly* and *Iqbal*. *See also Fowler*, 578 F.3d at 210.

It is undisputed in this case that Ross did not perform at Wild Things Park as scheduled on June 17, 2017; that deposit monies were paid by WCFE for that performance; and that those monies have not been returned. WCFE's overarching concern as expressed in its briefing and the Second Amended Complaint is that Defendants acted in concert to fraudulently obtain the deposit monies from WCFE and, in so doing, intentionally crafted agreements, including the Wardlow Agreement, in such a way as to insulate Ross (and/or other Defendants) from liability should

---

[10] To the extent Ross contends that WCFE's decision to add a claim against him for unjust enrichment signifies WCFE's belief that the breach of contract claim is without merit (ECF No. 73, at 6), such argument is unfounded. It is well-established that plaintiffs are permitted to plead in the alternative, and there is no exception to the alternative pleading rule for unjust enrichment and breach of contract claims, even if those claims cannot co-exist in the end. *See* Fed. R. Civ. P. 8(d); *Sensus USA, Inc. v. Elliott Bay Eng'g, Inc.*, No. CIV.A. 10-1363, 2011 WL 2650028, at *5 (W.D. Pa. July 6, 2011).

WCFE seek recourse from Ross (and/or other Defendants) for losses caused by his failure to perform, including return of the deposit monies paid. The fact that Ross spends the bulk of his brief disclaiming liability on the grounds that it was not he, but other individuals and entities such as Goodlife, Wardlow, and/or Ross Touring, that had dealings with WCFE and each other, while at the same time conveniently failing to address the alleged intertwining relationships between himself and those entities, echoes WCFE's fears and confirms that it would be premature to decide these issues on a motion to dismiss. Whether or not WCFE ultimately can prove its claims is a matter more properly left for resolution at a later stage of the proceedings after discovery.

## IV. CONCLUSION

For the aforementioned reasons, after due consideration of Ross Touring's Motion to Dismiss the Second Amended Complaint under Rule 12(b)(2) and 12(b)(6) (ECF No. 70), Ross's motion to dismiss the Second Amended Complaint under Rule 12(b)(6) (ECF No. 72), and WCFE's responses in opposition thereto, both motions are denied.

An appropriate order will follow.

Dated: July 5, 2018

BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*